UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONAL VARGAS, et al.,<br><br>　　　　　　　　　Plaintiffs,<br>　vs.<br><br>HSBC BANK USA, N.A., et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 11-cv-2729 BEN (RBB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>[Docket No. 20] |

Presently before the Court is the joint motion to strike and motion to dismiss of Defendants HSBC Bank USA, N.A., Litton Loan Servicing, LP, and Ocwen Loan Servicing, LLC. For the reasons stated below, the motion to strike is denied. The motion to dismiss is granted in part, with leave to amend.

**BACKGROUND**

On September 27, 2011, Plaintiffs Ronal Vargas and Maria Vargas (husband and wife) filed suit against Defendants HSBC Bank U.S.A, National Association ("HSBC Bank"); Litton Loan Servicing, LP ("Litton"); and Ocwen Loan Servicing, LLC ("Ocwen") in the Central District of California. Defendants filed a motion to dismiss. Plaintiffs filed an amended complaint. Thereafter, the United States District Court for the Central District of California transferred the case to this Court, based on improper venue.

Plaintiffs allege in the First Amended Complaint ("Complaint") that in September 2006, Plaintiffs obtained a loan for $480,000 to purchase real property in Chula Vista, California (FAC ¶ 1.) A promissory note in favor of the lender, Bridgefield Mortgage Corporation[1] (formerly known as ResMAE Mortgage Corporation), was executed along with a deed of trust. On April 11, 2008, a notice of default was recorded reflecting HSBC as Trustee of the loan and the amount of $20,127.22 due.

According to the Complaint, in March 2009, Plaintiffs initiated loan modification negotiation efforts with Litton to reduce the total amount of their mortgage. (FAC ¶ 20.) After three months of negotiation, Litton offered Plaintiffs a trial plan, effective July 1, 2009. After collecting Plaintiffs' first trial plan payment, Litton rejected their second payment. (FAC ¶ 21.) Following multiple attempts by Plaintiffs to reinstate the cancelled trial plan, the modification was re-approved, effective January 1, 2010. (FAC ¶ 24.) After collecting five modified payments, Litton denied the loan modification.

In the Complaint, Plaintiffs allege three federal claims for relief and a number of ancillary state law claims: (1) violation of 15 U.S.C. § 1641(g) (The Helping Families Save Their Homes Act of 2009); (2) violation of 12 U.S.C. § 2605 (Real Estate Settlement Procedures Act); (3) violation of 15 U.S.C. § 1692e (Fair Debt Collection Practices Act); (4) negligence; (5) quasi contract; (6) California Business and Professions Code Section 17200; (7) accounting; (8) quiet title; (9) breach of contract; (10) breach of implied covenant of good faith and fair dealing; and (11) declaratory relief.

**DISCUSSION**

**I. DEFENDANTS' MOTION TO STRIKE**

This is a frivolous motion. Defendants first move to strike the Complaint as untimely filed. Defendants argue that under the 2009 amendments to Fed. R. Civ. P. Rule 15(a), Plaintiffs have 21 days to file an amended complaint without leave of court. That is correct. However, Defendants assert that the time period for amending ran out on November 11, 2011. Defendants are apparently unaware that November 11, 2011 was a federal holiday (Veterans' Day) during

---

[1]Bridgefield Mortgage has been dismissed as a Defendant from this case.

1  which federal courts were closed for business.[2]  Overlooking that, Defendants charge that when the
2  amended Complaint was filed on November 14, 2011, it was three days late.  But under Fed. R.
3  Civ. P. 6(a)(1)(C), which governs computing time for motions, if the last day of the period is a
4  Saturday, Sunday, or a legal holiday, the period continues to run until the end of the next day that
5  is not Saturday, Sunday, or a legal holiday.  Thus, when the Plaintiffs timely filed their amended
6  Complaint on November 14, 2011, it was timely.  Curiously, although this plain error was pointed
7  out in Plaintiffs' opposition brief, defense counsel have done nothing to withdraw their flawed
8  motion to strike.[3]  The motion to strike is denied.

## II. REQUESTS TO TAKE JUDICIAL NOTICE

Defendants request the court take judicial notice of documents in support of their motion to dismiss.  Plaintiffs request judicial notice in support of their opposition.  "In deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), a court may look beyond plaintiff's complaint to matters of public record." *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); Fed. R. Evid. 201(b).  Thus, the Court will take judicial notice of the existence of documents identified by Defendants and Plaintiffs.  The Court does not, however, take judicial notice of facts asserted within the documents that are disputed.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

## III. DEFENDANTS' MOTION TO DISMISS THE FEDERAL CLAIMS

Next, Defendants attack the three federal claims for relief under Fed. R. Civ. P. 12(b)(6), whereupon dismissal is appropriate if the complaint fails to state a plausible claim for relief on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully").  Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal

---

[2] Veteran's Day is a legal holiday for purposes of Fed. R. Civ. P. Rule 6.  *See* Fed. R. Civ. P. Rule 6(a)(6)(A).

[3] Defendants' legal contention is not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. Rule 11(b)(2).

1 evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under
2 which relief may be granted. *Twombly*, 550 U.S. at 555-56.

3     In resolving a Rule 12(b)(6) motion, a court generally cannot consider material outside the
4 complaint. *Branch v. Tunnel,* 14 F.3d 449, 453-54 (9th Cir. 1994). However, a court may still
5 consider exhibits attached to the complaint. *Id*. A court may treat such a document as "part of the
6 complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under
7 Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). In addition, "[a] court
8 may . . . consider certain materials – documents attached to the complaint, documents incorporated
9 by reference in the complaint, or matters of judicial notice – without converting the motion to
10 dismiss into a motion for summary judgment." *Id*. However, judicial notice of adjudicative facts
11 are only taken when they are "not subject to reasonable dispute." *Id.*

### A.  Violation of TILA (15 U.S.C. § 1641(g)) Against HSBC Bank

13     For its fifth claim for relief, Plaintiffs allege that Defendant HSBC violated 15 U.S.C.
14 § 1641(g) of the Truth in Lending Act ("TILA") by failing to provide Plaintiffs written notice
15 within 30 days after HSBC was assigned the original promissory note. Plaintiffs also allege that
16 they never received notice of the date of any assignment. Under § 1641(g), a creditor that is the
17 new owner or assignee of a debt must notify the borrower in writing of such transfer no later than
18 30 days after the date on which a mortgage loan is sold or otherwise transferred. Significantly,
19 TILA's "notice requirement" clause was added in 2009. Pub. L. No. 111-22, 123 Stat. 1632.

20     Defendants move to dismiss for failure to state a claim arguing this subsection did not exist
21 when the note was sold to HSBC in 2007. In support of their argument, Defendants rely on the
22 truth of matters contained in a judicially noticable document, the "Notice of Default." The Notice
23 of Default reflects HSBC Bank as the trustee and Mortgage Electronic Registration Systems as the
24 beneficiary of the note, at the time it was filed with the San Diego Recorder's Office on April 14,
25 2008. The problem with Defendants' argument is that it requires the Court to prematurely decide a

genuine issue of material fact: if and when HSBC became Plaintiffs' "creditor."[4] Defendant's second argument, that the claim is time-barred by the one-year statute of limitations on TILA claims, is likewise premature. Without deciding the factual issue of when HSBC became a creditor, one cannot say when the statue of limitations began to run. Even if it were undisputed as to when HSBC became a creditor, neither party has addressed the question of whether § 1641(g) has retroactive application, whether § 1641(g) imposes a continuing duty on a creditor, or whether the statute of limitations may be tolled.

The gist of Plaintiffs' Complaint is that they do not know when, if ever, the note was transferred to HSBC, but they do know that HSBC took actions as if it were their creditor. On summary judgment or at trial, it may well become clear that HSBC did not violate § 1641(g) or that the claim is time-barred. But at this point, Plaintiffs have plausibly pled a claim for relief. Defendants' motion to dismiss this claim is denied.

**B. Violation of RESPA (12 U.S.C. § 2605(e)) Against Litton**

In their sixth claim for relief, Plaintiffs allege that Defendant Litton violated the Real Estate Settlement Procedures Act ("RESPA") when Litton failed to respond to a qualified written request ("QWR") mailed in March 2011.

RESPA requires any servicer of a federally regulated mortgage loan to take any of several actions within 60 days of receiving a qualified written request. 12 U.S.C. § 2605(e)(3). The Act requires that a servicer: (1) make any applicable changes to the borrower's account as requested; (2) explain in writing why such changes cannot be made; (3) provide the borrower the information requested; or (4) explain why that information is unavailable. 12 U.S.C. § 2605(e)(2).

To constitute a QWR, the written correspondence must meet certain requirements. First, it has to request "information relating to the servicing" of his loan. 12 U.S.C. § 2605(e)(1)(A). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest . . . with respect to the amounts received from the borrower . . . ." 12 U.S.C. § 2605(i)(3). Second, the

---

[4] The definition of "creditor" for purposes of § 1641(g) may be broader than the definition of creditor used elsewhere in TILA. See *Squires v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 137581, 2011 WL 5966948 (S.D. Ala. Nov. 29, 2011).

letter must include sufficient information to allow the loan servicer to identify the borrower's name and account. 12 U.S.C. § 2605(e)(1)(B)(I). Third, the letter must "include[ ] a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

In their letter to Litton, Plaintiffs wrote that the letter concerned "sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may also negatively affect any credit rating, mortgage account and/or the debt or payments" for which they may be legally obligated. The letter sought at least 10 different items of information. (FAC Ex. B.) The letter also included the borrower's name and the loan number. The letter in this case is quite similar to the one in *Fazio v. Experian Info. Solutions, Inc.*, 2012 WL 2119253, at *3-4 (N.D. Cal. June 11, 2012). In that case the court determined that the letter constituted a QWR.

Litton argues that Plaintiffs' letter sought information and documents relating to ownership of the loan, rather than servicing of the loan. Defendant also argues that to constitute a QWR, the Plaintiffs' letter had to state why the account was in error. Relying on *MorEquity v. Nameem*, (118 F. Supp. 2d 885, 900-01 (N.D. Ill. 2000)), Litton argues that Plaintiffs failed to state a claim for relief. *MorEquity* is not persuasive. In fact, the Seventh Circuit (the appeals court having supervision over the *MorEquity* court) has recently rejected this argument. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011); *see also Burton v. Countrywide Bank, FSB,* 2012 WL 976151 (D. Idaho Mar. 1, 2012) (agreeing with and describing *Catalan*'s disagreement with *MorEquity*); *Luciw v. Bank of America, N.A.*, 2010 WL 3958715, at *2-3 (N.D. Cal. Oct. 7, 2010) (borrower may assert error or request other information). The Seventh Circuit held that "RESPA does not require any magic language." *Catalan*, 629 F. 3d at 687. "Any reasonably stated written request for account information can be a qualified written request." *Id.* The Seventh Circuit concluded that the plaintiff had made a QWR, rejecting *MorEquity* and similar cases.

*Catalan* is persuasive. Applying *Catalan* to this case, Plaintiffs' letter would be considered a QWR because it included enough details on information – not only on the ownership of the loan

but also the servicing of the loan. Because it is alleged that Litton failed to respond to the QWR, Plaintiffs state a plausible claim for relief.

Defendant Litton also argues that to recover damages under this Act, Plaintiffs need to claim they have incurred "actual damages" as a result of Litton's failure to reply to their request. 12 U.S.C. § 2605(f)(1)(A). Section 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower" for actual damages. To qualify under RESPA, Plaintiffs must plead either that they have suffered actual damages or that [Defendant] has engaged in a pattern or practice of violating RESPA. *Luciw*, 2010 WL 3958715, at *4. Courts have liberally interpreted this requirement. *See Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3, 2009) (holding that plaintiff's allegation she was required to pay a referral fee prohibited under RESPA is sufficient allegation of actual damages to survive motion to dismiss); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006) (holding that plaintiffs sufficiently pled actual damages when they alleged "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing" where defendant reported delinquency to credit bureaus during 60-day statutory period following receipt of QWR).

Here, Plaintiffs alleged in their FAC that as a "direct and proximate result of the violations of RESPA" by Defendants, Plaintiffs have suffered actual damages, including "the over calculation and overpayment of interest on Plaintiffs' loan, the costs of repairing Plaintiffs' credit, the reduction, and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their property title . . . ." (FAC ¶ 108.) In addition, Plaintiffs also alleged the following damages: "(1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their home has been clouded; (3) they have been paying the wrong party; (4) they are unable to determine whether they sent their monthly mortgage payments to the right party; (5) their credit and credit scores have been damaged; and (6) they have expended significant funds to cover the cost of attorneys' fees and related costs." (FAC ¶ 110.) This is sufficient. Plaintiffs have stated a plausible claim under RESPA. Accordingly, as to this claim, Defendants' motion to dismiss is denied.

**C. Violation of FDCPA (15 U.S.C. § 1692) Against All Defendants**

Defendants also move to dismiss the fourth claim for relief, wherein Plaintiffs allege that Defendants engaged in collection activities that violate the Fair Debt Collection Practices Act ("FDCPA").[5] "To be held liable for violati[ng] the FDCPA, a defendant must, as a threshold requirement, fall within the Act's definition of 'debt collector.'" *Izenberg v. ETS Serv., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) and *Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998)).

Defendants do not argue that they are not debt collectors but argue, instead, that FDCPA does not cover "foreclosure-related debt collection activities," relying on an interpretation applied in *Gamboa v. Trustee Corps*, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) and similar cases. *See Izenberg*, 589 F. Supp. 2d at 1198-99 (same); *Ines v. Countrywide Home Loans, Inc.*, 2008 WL 4791863 (S.D. Cal. Nov. 3, 2008) (same); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (foreclosure actions are not debt collections and foreclosure proceedings are not conducted by debt collectors). These cases are not persuasive.

While the Ninth Circuit has yet to address the question, other circuit courts have. For example, the argument has been rejected by the Fourth Circuit. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006) (defendants cannot benefit from § 1692a(6)(F)(i)'s exception to the definition of debt collector merely because they were trustees foreclosing on a property pursuant to a deed of trust). It has also been rejected by the Fifth Circuit. *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a "debt collector" is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *see also Pizan v. HSBC Bank USA, N.A.,*

---

[5] Here, Plaintiffs allege that HSBC Bank attempted to collect Plaintiffs' debt obligation on behalf of the Nomura Trust investors and thus is a debt collector pursuant to the Federal Debt Collection Practices Act. (FAC ¶ 66.) They also allege that "Defendants Litton and Ocwen, both obtained servicing rights to collect Plaintiffs' Note and Mortgage for HSBC Bank after Plaintiffs' were in default and thus are considered debt collectors under the FDCPA." (FAC ¶ 67.)
A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

2011 U.S. Dist. LEXIS 66861 (W.D. Wash. June 23, 2011) ("In asserting that QLS Corp. is not a 'debt collector' within the meaning of the FDCPA, defendants rely on *Hulse v. Ocwen Fed. Bank, FSB*. *Hulse*, however, has been called into question by two circuits and at least two district courts within the Ninth Circuit."); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 523-24 (E.D. La. 2009) (same).[6]

The two circuit decisions are persuasive and apply here to dispatch Defendants' argument. Therefore, Plaintiffs have stated a plausible claim for relief and Defendants' motion to dismiss this claim is denied.

### IV. DEFENDANTS' MOTION TO DISMISS THE STATE LAW CLAIMS

California law describes the contours of these supplemental claims for relief. "[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Peschel v. City of Missoula*, 2009 U.S. Dist. LEXIS 25333, 29-30 (D. Mont. Mar. 27, 2009) (quoting *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *United States Fidelity & Guaranty Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1133-34 (9th Cir. 2011) (citations omitted). "In analyzing state law in a diversity case, we are bound by the decisions of the state's highest court. . . [and] [i]f the California Supreme Court has not decided the question, we are required to ascertain from all the available data what the state law is and apply it." *Id.* (citations omitted).

### A. Negligence

For their second claim for relief, Plaintiffs claim HSBC, Litton, and Ocwen have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiffs that they do

---

[6] It is not clear why counsel for HSBC in this case does not mention the decision by the United States District Court for the Western District of Washington in *Pizan v. HSBC Bank USA, N.A.*, 2011 U.S. Dist. LEXIS 66861 (Jun. 23, 2011). Certainly, HSBC must be aware of that decision rejecting the same FDCPA argument Defendants puts forward in this case. An attorney has some duty to advise a court of the existence of contrary authority. Of course, counsel is not expected to be aware of all of the numerous consumer mortgage cases decided in the country, but counsel's clients, no doubt, are aware of the other cases in which they are named parties.

not have the legal authority to take. (FAC ¶ 56.) Plaintiffs argue that both HSBC and Litton/Ocwen breached that duty when they demanded mortgage payments that they were not owed and reported derogatory items against Plaintiffs' credit report. As a result, it is alleged that Plaintiffs have suffered damages.

Defendants move to dismiss, arguing that, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money, citing *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (savings and loan "acting in its conventional role as a lender of money owed no duty of care to plaintiff in preparing the appraisal of his collateral"). *See also Gutierrez v. PNC Mortg.*, 2012 U.S. Dist. LEXIS 41890 (S.D. Cal. Mar. 26, 2012); *Perlas v. GMAC Mortg., LLC,* 187 Cal. App. 4th 429, 436 (2010); *Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (loan servicer owes no duty of care to borrower).

Plaintiffs acknowledge as much, but argue that the relationship between themselves and Defendants is not a "conventional" lender/borrower relationship. Neither side cites a decision from the California Supreme Court or the Ninth Circuit Court of Appeals on this more nuanced claim of negligence. At least one lower court has addressed similar issues. The United States District Court for the Northern District of California found a plausible state law claim of negligence against an assignee of a mortgage for negligently processing a mortgage loan modification. *Kennedy v. Bank of America, N.A.*, 2012 WL 1458196 at *7 (N.D. Cal. Apr. 26, 2012).

Although it is a close call, here Plaintiffs' allegations do not state a plausible claim for negligence under state law. Plaintiffs allege that the Defendants "formed an unconventional relationship with Plaintiffs." (FAC ¶ 55.) They allege that the unconventional relationship arose when the Defendants chose to "take part in a new era of securitization of mortgage loans." *Id.* While this allegation describes an unconventional undertaking, it can may be characterized in the broader sense as a conventional lender/borrower relationship. Plaintiffs also allege that the Defendants have a duty to "exercise reasonable care and skill to follow California law with regard

to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiffs that they did not have the legal authority to do." (FAC ¶ 56.) This allegation is too broad in its scope and too general in its specification of the duties allegedly breached to state a plausible claim for relief. The remaining allegations are similarly overbroad and generalized. Accordingly, Plaintiffs fail to state a claim for negligence. The motion to dismiss as to the negligence claim is granted, without prejudice.

### B. Quasi Contract

For their third claim for relief, Plaintiffs allege that Defendants had no contractual right to receive six years of mortgage payments and that they are entitled to the amount of those mortgage payments under California state law quasi contract theory of relief. Thus, Plaintiffs argue, by demanding monthly mortgage payments from Plaintiffs since September 20, 2006, and collecting payments for about six years, Defendants have been unjustly enriched. Plaintiffs argue that they relied on Defendants' assertion that they were entitled to payments, and Defendants "knowingly accepted payments and retained them for their own use," knowing that they did not acquire an interest in the loan. Defendants move to dismiss. Defendants argue that there can be no recovery under a quasi contract theory when there exists a valid contract. *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996).

It may prove to be the case at summary judgment, or at trial, that there does exist a valid contract between Plaintiffs and Defendants. And it may prove to be true that the Defendants were owed under that contract all of the money they received from Plaintiffs. However, at the pleading stage, Plaintiffs are permitted to allege, and do allege, that no valid contract exists between them. Plaintiffs are permitted to allege, and do allege, that the Defendants have been receiving and keeping payments from Plaintiffs over the past six years. "In California, unjust enrichment is typically alleged in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 U.S. Dist. LEXIS 57348, at *29 (N.D. Cal. May 26, 2011) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (under California law, unjust enrichment is an action in

1  quasi-contract); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) ("unjust
2  enrichment is a basis for obtaining restitution based on quasi-contract")). Plaintiffs have stated a
3  plausible claim for relief under California state law. *See e.g., Astiana*, 2011 U.S. Dist. LEXIS
4  57348, at *29. The Defendants' motion to dismiss this claim is denied.

**C. Violation of California Business and Professions Code § 17200**

6  For their seventh claim for relief, Plaintiffs allege that Defendants violated California
7  Business and Professions Code § 17200, which prohibits unfair business practices. Plaintiffs
8  allege that Defendants failed to provide them with notice of the date of the loan assignment, failed
9  to provide means by which they could reach an agent or party having authority to act on behalf of
10  HSBC, and failed to provide notice of other information regarding the new assignee. Defendants
11  move to dismiss the claim asserting that their acts were not unlawful, fraudulent, or unfair because
12  their foreclosure proceedings were in accordance with statute and the deed of trust. In addition,
13  Defendants argue, Plaintiffs have not suffered injury in fact, a requirement in order to recover
14  damages under § 17204, because the property has not yet been sold, the notice of default has been
15  rescinded, and the property was being foreclosed as a result of Plaintiffs' defaulting on their loan,
16  not due to an unfair business practice.

17  To state a claim under § 17200, "a plaintiff must allege that the defendant committed a
18  business act that is either fraudulent, unlawful, or unfair." *Levine v. Blue Shield of Cal.*, 189 Cal.
19  App. 4th 1117, 1136 (2010). The purpose of the law is "to protect both consumers and
20  competitors by promoting fair competition in commercial markets for goods and services." *Kasky*
21  *v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). Each prong of § 17200 describes a separate and distinct
22  theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). As to the
23  unlawful prong, § 17200 incorporates other laws and treats violations of those laws as unlawful
24  business practices independently actionable under state law. *Chabner v. United of Omaha Life Ins.*
25  *Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). As to the unfair prong, "[a]n unfair business practice is
26  one that either 'offends an established public policy' or is 'immoral, unethical, oppressive,
27  unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d
28  498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App.

1  3d 509, 530 (1984)).  As to the fraudulent prong, "fraudulent acts are ones where members of the
2  public are likely to be deceived."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152
3  (9th Cir. 2008).

4       Plaintiffs allege that they have been injured by Defendants' business practices because:
5  "(1) multiple parties may seek to enforce their debt obligation against them; (2) the title to their
6  home has been clouded and its salability has been rendered unmarketable, as any buyer of
7  Plaintiffs' home will find themselves in legal limbo . . . ; (3) they have been paying the wrong
8  party for an undetermined amount of time and overpaid in interest that was overcalculated; (4)
9  they are unable to determine whether they sent their monthly mortgage payments to the right party;
10 (5) their credit and credit scores have been damaged; and (6) they have expended significant funds
11 to cover the cost of attorneys' fees and related costs."

12      In *Mosarah v. SunTrust Mortg.*, 2012 U.S. Dist. LEXIS 80656 *16-17 (E.D. Cal. Jun. 7,
13 2012), the United States District Court for the Eastern District of California found a mortgagor's
14 § 17200 allegations failed to state a claim for relief.  The plaintiffs in *Mosorah* alleged that
15 defendants "instituted improper or premature foreclosure proceedings to generate unwarranted fees
16 . . . executing and recording documents without the legal authority to do so . . . demanding and
17 accepting payments for debts that were non-existent . . . acting beneficiaries and trustees without
18 the legal authority to do so."  *Id*.  The *Mosarah* court found these to be a "conclusory recital" of
19 alleged misconduct without demonstrating how any the misconduct was perpetrated.  *Id*.

20      Plaintiffs' allegations are far more detailed and specific.  For example, Plaintiffs have
21 specified (under the "unlawful" prong) several other legal violations pled in their Complaint:
22 (a) HSBC violated 15 U.S.C. §1692e; (b) Litton and Ocwen violated 15 U.S.C. § 1692e; (c) HSBC
23 violated 15 U.S.C. § 1641(g); (d) Litton violated 12 U.S.C. § 2605.  Plaintiff have additionally
24 specified several instances of unfair conduct.  Finally, Plaintiff allege that the Defendants
25 "fraudulently enforced a debt obligation in which they had no pecuniary, equitable, or legal
26 interest . . . as part of a fraudulent collection scheme."  These are examples – not the entirety of the
27 § 17200 allegations.  The allegations, of course, may prove to be untrue.  That judgment is
28 reserved for later proceedings.  At this juncture, however, Plaintiff have stated a plausible claim

for relief under Cal. Bus. & Prof. Code § 17200.  The Defendants' motion to dismiss this claim is denied.

**D.  Accounting**

For their eighth claim for relief, Plaintiffs allege that Defendants, who held themselves out to be Plaintiffs' creditors and mortgage servicers, have a fiduciary duty to Plaintiffs to properly account for payments made by Plaintiffs.  Plaintiffs allege that as a result of the Defendants' conduct, Plaintiffs paid Defendants their mortgage payments for six years.  The amount of money Defendants owe to Plaintiffs, they allege, cannot be ascertained without an accounting. Defendants move to dismiss this claim for relief.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).  "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation.  A plaintiff need not state facts that are peculiarly within the knowledge of the opposing party."  *Id.*  (citations omitted).  Plaintiffs' Complaint alleges each of these elements.  Plaintiffs allege that the Defendants have a fiduciary relationship and duty owed to the Plaintiffs.  Further, it is alleged that Defendants' wrongful conduct induced Plaintiffs to make six years of mortgage payments to Defendants, although none was actually owed to the Defendants.  Finally, it is alleged that the amount of money owed by Defendants to Plaintiffs cannot be ascertained without an accounting.

These allegations are sufficient to state a plausible claim for relief under state law for an accounting.  Defendants argue that the claim is insufficient because "there is no possible fiduciary duty between Defendants and Plaintiff nor has one been alleged in the Complaint."  Defendants' first argument assumes a fact (the existence of a fiduciary duty) still in dispute, which cannot be

resolved on a motion to dismiss.[7] The second argument is belied by the Complaint. *See* FAC ¶ 143 ("As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for payments made by Plaintiffs."). Whether Plaintiffs will succeed on their claim when put to their proof remains to be seen. At this stage, a cognizable claim has been alleged and the motion to dismiss this claim is denied.

### E. Quiet Title

Plaintiffs seek to quiet title to their home. Defendants move to dismiss the claim, first arguing that the Complaint is not verified and does not contain a legal description of the property as required by Cal. Civ. Proc. Code § 760.020(a)-(e).[8] They also argue that Plaintiffs cannot quiet title without tendering or alleging tender of their debt. Both arguments are frivolous.

Pleadings in federal courts are governed by Fed. R. Civ. P. Rule 8, which requires only a "short and plain statement of the claim." That a state requires something different by its rules of procedure is of no importance. "*Erie* [*v. Tompkins*] and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer*, 380 U.S. 460, 473 (1965). Under *Erie*, Plaintiffs' need not satisfy the pleading requirements of California's state courts. Plaintiffs have, on the other hand, met the Fed. R. Civ. P. Rule 8 required short and plain statement of their claim for quiet title relief.

Plaintiffs second flawed argument is answered by the Complaint where it is alleged: "Plaintiffs have offered to tender their obligation and are ready, willing, and able to tender their obligation." FAC ¶ 147. At this stage of the proceedings, Plaintiffs need do no more. Accordingly, the motion to dismiss the quiet title claim for relief is denied.

---

[7] "However, a fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting. The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." *Teselle*, 173 Cal. App. 4th, at 179-80.

[8] California Code of Civil Procedure requires one seeking to quiet title: "(1) a description of the property; (2) the title of the plaintiff and the basis for that title; (3) the adverse claims to the plaintiff's title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff's title against the adverse claims." Cal. Civ. Proc. Code § 760.020.

**F. Breach of Contract**

For their tenth claim for relief, Plaintiffs argue in the alternative that if the Court finds that HSBC Bank is a successor in interest to the Deed of Trust, then Defendants breached the Deed of Trust by "improperly crediting and debiting their account." (FAC ¶ 154.) Defendants move to dismiss.

The elements of a breach of contract claim under California law are: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for failure to perform; (3) defendant's breach; (4) damages. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006). Defendants do not argue that they are not parties to a contract. They argue, instead, that Plaintiffs cannot raise this claim because they assert Plaintiffs did not fulfill their own duties. In addition, Defendants assert that Plaintiffs have not suffered any damages because the property has never been sold and the Notice of Default has been rescinded. Neither argument has merit.

Once again, judging a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) does not involve deciding genuine issue of material fact (such as whether a party has breached a contract). That may be done later by a jury. At this point, Defendants argument requires a court to conclude that Plaintiffs have breached the terms of the promissory note. Such a finding would be premature, since Plaintiffs allege in the Complaint, "the Deed of Trust set forth the dates that the monthly principal and interest payments were due and when late fees and other charges could be assessed," and that they "substantially performed all of their conditions in the Deed of Trust." (FAC ¶¶ 157, 159.) Defendants' argument that "one party to a contract cannot compel another to perform while he himself is in default," relies on the bald assertion that Plaintiffs are in default. Such an argument may prevail at trial but it cannot support a motion to dismiss.

Defendants second argument is more easily answered. They assert that Plaintiffs have not suffered damages because their house has not been foreclosed. But Plaintiffs describe in their claim for relief a number of different ways in which the alleged breach of contract have caused them damages. These allegations are sufficient to plausibly state a claim for relief. Therefore, the motion to dismiss the contract claim is denied.

**G. Breach of Implied Covenant of Good Faith and Fair Dealing**

For their eleventh claim for relief, Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing by "making it impossible for Plaintiffs to carry out their obligations under the contract because of the improperly applied payments and addition of interest and improper fees to their account." (FAC ¶ 165) The factual basis of the argument is similar to the breach of contract claim. Defendants move to dismiss. Defendants are correct that Plaintiffs have failed to state a claim for relief cognizable under California law.

California law does not generally provide a tort remedy for breach of the implied covenant of good faith and fair dealing where the parties occupy the position of lender and borrower. "The California Supreme Court [has] held that the tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts. It established a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of an independent duty arising from principles of tort law other than the bad faith denial of the existence of, or liability under, the breached contract." *Harris v. Wachovia Mortgage, FSB*, 185 Cal. App. 4th 1018, 1023 (2010) (citations and internal quotations omitted); *see also Mitsui Manufacturers Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989); *Dubin v. BAC Home Loans Servicing*, 2011 WL 794995, at *7-8 (N.D. Cal. Mar. 1, 2011) (dismissing claim because the relationship between the defendant and the plaintiff was that of lender and borrower). Without a change in California law, Plaintiffs cannot state a valid claim for relief.

Accordingly, Plaintiffs fail to state a claim for breach of implied covenant of good faith and fair dealing. The motion to dismiss is granted and the eleventh claim is dismissed without prejudice.

**H. Declaratory Relief**

Plaintiffs ask the Court to "declare the actual rights and obligations of the parties and make a determination as to whether HSBC Bank's claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right, title, or interest in Plaintiffs' Property." Defendants argue that because declaratory relief is "wholly derivative of their other failed claims," the claim must be dismissed. While Defendants are correct that declaratory relief is derivative of other

claims, Plaintiffs have adequately pled other claims for which declaratory relief could be awarded. As a result, there is no basis to dismiss this request for relief.

**CONCLUSION**

Defendants' Motion to Strike is denied. Defendants' Motion to Dismiss the claim for negligence (the Second Claim) and the claim for breach of the covenant of good faith and fair dealing (the Eleventh Claim) is granted. The remainder of the motion is denied.

Plaintiffs are granted leave to amend their Complaint and must do so, if at all, within 14 days of the date of this Order. If Plaintiffs choose not to amend and instead proceed with their current Complaint, Defendants must answer the remaining claims no later than 21 days after the date of this Order.

DATED: September 10, 2012

_____
Hon. Roger T. Benitez
United States District Judge